

## Fourth Court of Appeals
### San Antonio, Texas

## DISSENTING OPINION

No. 04-18-00131-CV

Lorraine **KENYON**, Individually and as Executrix of the Estate of Theodore Kenyon,
Appellant

v.

**ELEPHANT INSURANCE COMPANY, LLC**,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CI14055
Honorable Michael E. Mery, Judge Presiding

### DISSENT TO OPINION ON EN BANC RECONSIDERATION

Opinion by:    Luz Elena D. Chapa, Justice
Dissenting Opinion by: Sandee Bryan Marion, Chief Justice
Dissenting Opinion by: Rebeca C. Martinez, Justice

Sitting en banc:    Sandee Bryan Marion, Chief Justice
                    Rebeca C. Martinez, Justice
                    Patricia O. Alvarez, Justice
                    Luz Elena D. Chapa, Justice
                    Irene Rios, Justice
                    Beth Watkins, Justice
                    Liza A. Rodriguez, Justice

Delivered and Filed: April 1, 2020

I join Chief Justice Marion in dissent and concur with her *Phillips* factor analysis. I would

reach the same result but would add to her foreseeability and social utility discussions.

Appellant Lorraine Kenyon argues on appeal "[w]hile insurers might not have a duty to

protect their insureds from harm or to ensure their safety generally, insurers do owe a duty to their

insureds not to increase the danger to them at that time of vulnerability, and Elephant breached that duty when it told the Kenyons to take photographs of the accident scene and placed Mr. [Theodore] Kenyon in position to be struck and killed." This argument posits that injury to Theodore Kenyon was readily foreseeable given the general nature of accident scenes on the roadway as being dangerous. The inquiry I believe is not whether there is evidence that Elephant was aware of any prior, similar incidents in which an insured was injured while photographing an accident scene. Instead, the inquiry should be whether the injuries to Theodore Kenyon, one not involved in the accident but who arrived at some time post-accident, were the reasonably foreseeable consequence of Elephant's act or omission. In other words, is it reasonably foreseeable that a person not involved in the accident would arrive at the scene, begin to take photographs from a place susceptible to injury, and be injured?

Moreover, if this consequence is reasonably foreseeable, is there social utility of warning a person involved in an accident of risks that another person who may respond may face? While it may be arguably neither improbable nor unforeseeable that persons not involved in an accident may arrive upon the scene of an incident and be subject to risk of harm, as to social utility, I do not believe this risk imposes a duty on insurers to warn persons in accidents about the risks to persons who may arrive to assist. *See Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 544-45 (Tex. 1998) (holding that the risk that an elderly person may not appreciate the significance of a stock transaction is neither improbable nor unforeseeable but that this risk of injury does not warrant treating the elderly differently). The facts of this case demonstrate why the risk is too remote to impose a duty. Here, there is no evidence that Kenyon made Elephant aware of any foreseeable risk of harm to Mr. Kenyon. In fact, there is no evidence that Elephant was made

aware that Mr. Kenyon had arrived at the scene or had placed himself in a situation that posed a known risk of injury.

A review of Kenyon's recorded call to Elephant's representative Kaitlyn Moritz reveals that Kenyon provided her name, policy number, time of the accident, and contact information. The conversation was interrupted briefly, as follows:

Kenyon:    Just – Just a second. (Speaking to someone else) No. Thank you very much for caring.  All right.

All right.  I'm sorry.  That was – the Fire Department stopped by.

Moritz:    Okay.  That's fine.

Kenyon:    Uh-huh.  And do you have another question now?

Moritz:    What cell phone provider do you have?

Kenyon:    AT&T.

Moritz:    AT&T?  Okay.  And which vehicle was this?

Kenyon:    It's the 2 – 2006 Ford Ranger.

Moritz:    And so how did the incident happen?

Kenyon:    I was coming around the – a bend when – it's raining here and it's really wet, and the car started to slide and it spun and I hit a – a hill.

Moritz:    Okay.

Kenyon:    Do you want us to take pictures?

Moritz:    Yes, ma'am.  Go ahead and take pictures.  And – And we always recommend that you get the police involved but it's up to you whether you call them or not.

Is your vehicle drivable?

Kenyon:    No, it's not.

Moritz next inquired whether there was vehicle damage and if Kenyon had any injuries. Kenyon replied, "no injuries." Moritz asked, "No?" Kenyon indicated, "just scared and a little sore." After Moritz asked where the incident occurred and whether she knew who was towing the vehicle, the call continued as follows:

Kenyon: No. No. You – You're the first call I made. Well, I made a call to my husband, who was home, thank God, and then you –

Moritz: Okay.

Kenyon: – you're my second call.

Moritz: Okay. And pictures – And you said you're going to take pictures. And the vehicle is not drivable. Let me go back real quick.

It does look like you have roadside assistance towing on the policy, so what I can do is, I can go ahead and transfer you over to them, that way - -

Kenyon: Uh-huh.

Moritz: – they can help you out with getting the vehicle towed.

Kenyon then asked again about calling the police, and Moritz repeated her recommendation that she call the police, then asked if she could assist Kenyon further with anything else. Kenyon replied, "No. I've never had an accident." The last question Kenyon asked was whether she should dial 911, and Moritz' reply was interrupted by Kenyon's exclamation of her husband's name "Ted," followed by "Oh my God. Please dial 911 and get help. They've just run over my husband. The same thing happened to another car."

The transcript of Kenyon's call reflects Kenyon informing Moritz that she had called her husband first, who was at home, before calling Elephant. The transcript does not reveal evidence of Elephant's awareness that Mr. Kenyon had arrived on the scene and does not include Kenyon's statement to her husband to take pictures.

It may be reasonably foreseeable that individuals other than emergency personnel may arrive upon the scene of an incident, and the risk of injury to these individuals may be neither improbable nor unforeseeable.  However, to the question of whether these injuries were the reasonably foreseeable consequence of Elephant's act or omission, I believe the answer is no.  I do not believe this general risk imposes a duty on insurers to warn persons in accidents about the risks to other persons who may arrive to assist.

Rebeca C. Martinez, Justice